# Exhibit A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

PreHired, LLC, a Delaware limited liability company; and Joshua K. Jordan, an individual; and Does 1 through 20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ISA Plus, LLC, a Delaware limited liability company

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**07/01/2022** at 02:56:58 PM
Clerk of the Superior Court
By Armando Villasenor, Deputy Clerk

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO!* Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (*www.sucorte.ca.gov*), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (*www.lawhelpcalifornia.org*), en el Centro de Ayuda de las Cortes de California, (*www.sucorte.ca.gov*) o poniéndose en contacto con la corte o el colegio de abogados locales. *AVISO:* Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

---

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court
330 West Broadway
San Diego, CA 92101

**CASE NUMBER:**
*(Número)*
37-2022-00026192-CU-BC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John W. Howard, 701 B Street Suite 1725, San Diego, CA 92101    Tel: (619)234-2842

DATE: 07/06/2022    Clerk, by  *A. Villasenor*  , Deputy
*(Fecha)*               *(Secretario)*                                *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

JOHN W. HOWARD  (SBN 80200)
ANDREW G. NAGURNEY (SBN 301894)
JW Howard/ Attorneys, Ltd.
701 B Street Suite 1725
San Diego, CA 92101
Tel: 619-234-2842; Fax 619-234-1716

Email:  drew@jwhowardattorneys.com

Attorneys for ISA Plus, LLC

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
07/01/2022 at 02:56:58 PM
Clerk of the Superior Court
By Armando Villasenor, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO – CENTRAL DIVISION

| | |
|---|---|
| ISA PLUS, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>PreHired, LLC, a Delaware limited liability company; and Joshua K. Jordan, an individual; and Does 1 through 20, inclusive,<br><br>Defendants. | Case No.: 37-2022-00026192-CU-BC-CTL<br><br>**COMPLAINT FOR:**<br><br>**1.) Intentional Misrepresentation;**<br><br>**2.) Negligent Misrepresentation;**<br><br>**3.)  Concealment;**<br><br>**4.)  Breach of Contract; and**<br><br>**5.) Breach of Implied Covenant of Good Faith and Fair Dealing.** |

Plaintiff ISA PLUS, LLC, ("ISAP") alleges as follows:

### INTRODUCTION

1. This action results from Defendants' disregard for their contractional undertakings, coupled with active fraud and negligent misrepresentations in obtaining, and improperly retaining, the ill-begotten funds of ISAP.

2. Defendants originated and entered into Income Share Agreements ("ISA Contract(s)") with those of its customers ("obligors") who wished to finance the cost of Defendants' services.  Defendants then sold those ISA Contracts to Plaintiff pursuant to their Forward Purchase Agreement ("Agreement") subject to various terms, conditions, and warranties.

3. Per Defendants' express representations to ISAP's principal, the terms and warranties

of the Agreement, and indeed the basic understanding, assumption, and purpose underlying the contract itself, the ISA Contracts purchased by Plaintiff were supposed to be due and owing, performing, valid, binding, enforceable, and legal.

4.  To the extent the obligor of a performing ISA Contract purchased by Plaintiff later stopped servicing the debt, then the ISA Contract became recourse to Defendants pursuant to Plaintiff's "Put Back" rights set forth in the Agreement.

5.  Defendants' have refused to perform under the Agreement despite written demand from Plaintiff, necessitating the instant action.

## THE PARTIES

6.  On May 14, 2017, preHired, LLC, a limited liability company was incorporated in the state the of South Carolina ("preHired SC"). On February 23, 2021, preHired SC filed an "Application to Merge Out of Existence into a non-registered Foreign Entity."

7.  The surviving, aforementioned "non-registered Foreign Entity" was PreHired, LLC, a Florida limited liability company ("PreHired FL"). PreHired FL was formed shortly before the merger, on or about February 15, 2021.

8.  Around one year later, on March 22, 2022, PreHired FL filed Articles of Dissolution, stating that: "ON JANUARY 21ST, 2022, PREHIRED WAS MERGED OUT OF EXISTENCE."

9.  On December 23, 2021, Defendant Joshua K. Jordan caused Defendant PreHired, LLC a Delaware limited liability company to be formed ("PreHired DE"). On January 21, 2022, PreHired FL merged with PreHired DE, with Defendant PreHired DE as the surviving company and successor in interest to the disappearing company PreHired FL, and in turn preHired SC.

10. Following the mergers, Defendant PreHired DE is the surviving company and successor in interest to preHired SC and PreHired FL. As the successor in interest and surviving entity, PreHired DE assumed all of debts, liabilities, obligations, contracts, duties, and assets of any kind or nature, including without limitation intellectual property of PreHired FL and in turn preHired SC.

11. Defendant Joshua K. Jordan ("Jordan") is, and at all times relevant hereto was, the founder, managing member, principle, and chief executive officer for Defendant PreHired DE and its

predecessors in interest, preHired SC and PreHired FL. At all relevant times, there was unity of interest and ownership between Jordan, preHired SC, PreHired FL, and PreHired DE.

12. PreHired FL, preHired SC, and now PreHired DE, were used as mere instrumentalities for the transaction of Jordan's own business affairs and there is such unity of interest in ownership that the separate personalities of the corporations and the owner no longer exist.

13. The same is true for the other non-party corporate entities formed by Jordan to transact business, including without limitation PreHired Accelerator, LLC, a Florida limited liability company ("Accelerator FL"), PreHired Recruiting, LLC, a Florida limited liability company ("Recruiting FL"), and PreHired Recruiting, LLC, a Delaware limited liability company ("Recruiting DE").

14. As to Jordan's Florida companies, both Recruiting FL and PreHired FL listed their principal place of business as 3902 Henderson Blvd., 2nd Floor, Suite, 208, Tampa, FL 33629. Rather than principal office address for both Recruiting FL and PreHired FL, however, that is the address for the South Tampa CoCreative, which invites customers to "book now" for "those offsite meeting rooms you're looking for."[1]

15. Jordan's third Florida company, Accelerator FL, purports to have the same principal place of business as its designated agent, Northwest Registered Agent, LLC, at 7901 4th Street N., Suite 300, St. Petersburg, FL 33702.

16. Jordan thus utilized the various corporations including Defendant PreHired DE as a mere shell, instrumentality, and conduit for his single venture and individual business of selling training to "help ordinary people learn Science-Based Sales ® and land high-paying tech sales jobs."[2]

17. The trademark for Science-Based Sales, for example, is owned by Defendant Joshua K. Jordan, the original registrant and an individual. Despite this, Jordan caused his "trademark

---

[1] https://www.cocreativ.com/contact.html (last visited June 28, 2022)

[2] https://www.prehired.io/ (last visited June 28, 2022)

3
COMPLAINT

"Science-Based Sales" to be pledged by his corporate entities as "security for the payment and performance in full by Seller of Purchaser's Put Back right and Seller's other obligation to Purchaser" under the Agreement with ISAP. Jordan treats his own assets and corporate assets as one in the same and failed to observe corporate formalities, separateness, and existence.

18. On information and belief, Jordans companies including Defendant PreHired DE were all undercapitalize and inadequately funded, such that absent the infusion of capital from third party sources, such as ISAP, they could not operate.

19. Justice requires recognizing the substance of the relationship over the form because the corporate fiction distinguishing between preHired SC, PreHired, FL, PreHired DE and Jordan is being utilized to perpetuate a fraud or defeat rightful claims by Plaintiff.

20. An equitable result is achieved by disregarding the corporate form and holding Jordan personally liable for PreHired DE's breach of contract, as well as the fraudulent and negligent misrepresentations and fraudulent concealment, and conversion of Plaintiffs' property, as PreHired DE has been drained of assets and, without piercing the corporate veil, Plaintiffs will be unable to recoup damages and monies owed under the Agreement.

21. ISAP is, and at all times relevant hereto was, a Delaware limited liability company with is principal place of business in San Diego, California.

22. The true names and capacities, whether individual, corporate, associate or otherwise of defendants named herein as Does 1 through 20, are unknown to Plaintiff who therefore sues these defendants by the fictitious names "Does 1 through 20." When their true names and capacities have been ascertained, Plaintiff will amend this Complaint to identify them.

23. On information and belief all the named defendants were the agents, servants, employees, instrumentalities, representatives, co-venturers, principals, co-conspirators and/or partners of one another, and in doing the things hereafter alleged, were acting within the scope of their authority as agents, servants, employees, instrumentalities, representatives, co-venturers, principals, co-conspirators and/or partners, and with the permission and consent of one another, and as such share liability with each other in respect to the matters complained of herein.

///

## GENERAL BACKGROUND AND MATERIAL TERMS OF AGREEMENT

24. In and around the end of 2019 and the beginning of 2020, Jordan entertained discussions and negotiations with the principal and founder of non-party Strategic Education Loan Fund, LLC ("SELF"), concerning the purchase and sale of the ISA Contracts which at that time he originated and owned with preHired SC. As set forth more fully above, preHired SC later merged into PreHired FL, which has now merged into Defendant PreHired DE. As such, PreHired DE as the surviving company assumed the disappearing companies' assets, liabilities, duties, and obligations including the Agreement and those arising under, and relating to it, among other things.

25. The parties' agreement was memorialized in that certain Agreement dated January 7, 2020. In the meantime, SELF's founder formed ISAP to purchase and hold the ISA Contracts sold under the Agreement, which SELF assigned to ISAP upon its formation.

26. The Agreement defined the ISA Program and ISA Contract as follows:

i) "ISA Program" shall mean, an ISA contract ("ISA Contract"), with the following principal terms (or as may be mutually agreed by the Parties):

| Portfolio A | Portfolio B |
|---|---|
| Membership Fee: $15,000 | Membership Fee: $15,000 |
| Income Share: 12.5% | Income Share: 16% |
| Payment Term: 48 Months | Payment Term: 24 Months |
| Payment Cap: $30,000 | Payment Cap: $30,000 |
| Minimum Threshold: $40,000 | Minimum Threshold: $40,000 |

27. The initial due date for monthly payments on the ISA Contracts was triggered, if at all, only when the obligor's income met or exceeded the specified "Minimum Threshold." If that contingency was met the obligor owed a specified percentage of their income for the term or until the payment cap was met, whichever occurred first.

28. The Agreement required the "Seller" to provide Purchase Notices identifying the ISA Contracts that qualified to be purchased under the Agreement. The Purchase Notices further specified the purchase date and the price for which ISAP could purchase the monthly cohort of eligible ISA Contracts that were allegedly then performing.

29. The Purchase Notices were signed by Jordan as "Founder, CEO" and provided:

The undersigned, **PreHired, LLC** ("Seller"), refers to the that certain Forward Purchase Agreement, dated as of January 7, 2020 ("Purchase Agreement") as between Seller and **ISA Plus, LLC** ("Purchaser"). Capitalized terms used and not otherwise defined herein have the meanings specified in the Purchase Agreement. This Purchase Notice is made pursuant to, and in accordance with, all terms and conditions of the Purchase Agreement.

30. The Purchase Notices provided the banking information where ISAP was to wire the money to purchase the eligible ISA Contracts and a further representation that "Seller hereby certifies that the conditions precedent in the Purchase Agreement will be satisfied on the Purchase Date of the Purchase." It further included a place for the Seller and ISAP to sign and accept.

31. A spreadsheet was attached to each Purchase Notice providing further detail about the ISA Contracts to be purchased including the obligor's name, the ISA Contracts Repayment Start Date, payment reference number, and the amount paid among other things.

32. In addition to the certifications, representations, and details of the specific ISA Contracts contained in the Purchase Notices, paragraph 7 of the Agreement titled: "**Representations and Warranties of Seller.** Seller hereby represents and warrants to Purchaser and its successors and assigns that, on each Purchase Date:

   a. Organization and Good Standing. The legal name of Seller is PreHired, LLC. Seller is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of South Carolina. Seller has full power and authority to execute, deliver and perform its obligations under this Agreement, the ISAs related to the Purchased Receivables, and each of the other Transaction Documents to which it is a party.

   b. Due Authorization. The execution, delivery and performance of this Agreement and each of the other Transaction Documents to which it is a party are within Seller's powers, have been duly authorized by all necessary corporate action, and do not contravene (i) Seller's organizational documents, (ii) any law, rule, regulation, order, decree or contractual restriction binding on, or affecting, Seller, or (iii) any agreement, contract, indenture, credit agreement, mortgage, or other instrument, document or agreement to which Seller or any of its assets are subject.

   c. Consents. No authorization or approval or other action by, and no notice to or registration of or filing with, any regulatory body is required to be made by Seller for the due execution, delivery and performance by Seller, or to insure the legality, validity, binding effect or enforceability of, this Agreement, the ISAs or any of the other Transaction Documents to which it is a party.

   d. Enforceability. This Agreement and each other Transaction Document to which it is a party is and will be the legal, valid and binding obligation of Seller enforceable against Seller in accordance with its respective terms.

   e. Proceedings. There are no judgments or other judicial or administrative orders outstanding against Seller nor is there any pending or, to the best of Seller's knowledge, threatened action or proceeding affecting Seller which purports to affect the legality, validity or enforceability of any Transaction Document or seeks to prevent the consummation of any of the transactions contemplated by this Agreement or any other Transaction Document.

   f. Title to Property. Seller, with respect to any Receivables, immediately prior to the Purchase thereof by Purchaser hereunder, has good, indefeasible, and merchantable title to and ownership of such Receivables, free and clear of all liens (except as will be released as part of any Purchase Notice).

   g. Solvency. Seller has and will have adequate capital to conduct its business and does not intend to, and does not believe that it will, incur debts or liabilities beyond its abilities to pay as such debts and liabilities mature. Each sale of Receivables by Seller to Purchaser has been made for "reasonably equivalent value" (as such term is used under Section 548 of the Bankruptcy Code, 11 U.S.C. § 101, et seq., as amended.).

h. No Broker or Finders Fees. No Person is entitled to any broker's, finder's or other similar fee or commission in connection with Seller's entering into the transactions contemplated by this Agreement for which Purchaser may be liable.

i. Receivables. Each Receivable to be Purchased by Purchaser pursuant hereto is an Eligible Receivable on the applicable Purchase Date.

33. Paragraph 5 of the Agreement, titled "**Reimbursement of Purchase Price / Security Interest**" provides at subsection a thereof: "In the event: that any Obligor related to a Purchased Receivable **ceases** payments or **becomes** a non-payor for a period of longer than 120 days (a "Defaulted Receivable"), Purchaser has a right to put that Contract back to Seller at the Purchase Price less repayments received (Purchaser's "Put Back" rights)." (Emphasis added).

34. Hence, if a performing ISA Contract with payments that are due and owing is purchased, but the obligor later quits paying for longer than 120 days, then the purchased ISA Contract becomes a Defaulted Receivable with recourse to Defendant.

35. Subsection b thereof provided: "As security for the payment and performance in full by Seller of Purchaser's Put Back right and Seller's other obligations to Purchaser hereunder, Seller hereby grants, assigns and pledges Purchaser, its successors and assigns, a security interest, in any and all right, title or interest of Seller in or to any and all of the following assets and properties now owned or at any time hereafter acquired by Seller or in which Seller now has or at any time in the future may acquire any right, title or interest in: (i) the trademark "Science-Based Sales.", (ii) the software Seller has developed entitled "Science-Based Sales Certification Course", and (iii) in the good will of Seller's business. (collectively, the "Collateral"). The security interest constitutes continuing collateral security for all of the secured obligations. Upon completion of performance of the obligations imposed upon Seller hereby, Purchaser will make all filings and undertake all actions necessary and/or appropriate to release the Collateral and terminate any UCC financing statements as provided for herein."

36. Many ISA Contracts purchased by ISAP pursuant to the Agreement and Purchase Notices became a Defaulted Receivable with recourse to Defendants. Defendants failed to perform despite multiple written demands for same.

37. As of March of 2022, the Defaulted Receivables due and owing to ISAP totaled

$1,506,988.04 plus costs, fees and interest. Since then, that number has increased to more than $2,500,000 and as stated more fully below, is expected to increase further due to enforcement actions against Defendants being pursued by Attorneys General of various states.

38. On information and belief, several of the Defaulted Receivables were never performing and eligible for purchase under the Agreement and Purchase Notices in the first instance. On information and belief, rather than the obligor *making* payments as contemplated, Defendants would instead manually initiate a withdrawal of payments from certain obligors using their banking information on file with negligent, reckless, and/or intentional disregard for whether the obligor had in fact satisfied the minimum threshold triggering payments, as a means of improperly obtaining funds from ISAP under false pretenses.

39. On information and belief, Defendants would purport to trigger the minimum threshold by using estimated income figures that relied on unearned, potential commission, manually adjusting the minimum threshold in order to qualify the ISA Contract for repayment purportedly because the obligor failed to accept a bona fide offer or collect payments from obligors who obtained employment in an unrelated and different field.

40. As a result of these practices and others, on information and belief Defendants are now the target of an investigation by the Attorneys General of various states, including Washington, Delaware, and California. On information and belief, certain of the Attorneys General contend, assert, and allege that the ISA Contracts originated by Defendants as implemented and applied by Defendants and their practices are unenforceable, invalid, not binding, illegal and Defendants had no such authority, power, or ability to execute, deliver, or perform the ISA Contracts which violate various laws, rules, and regulations.

41. In addition to selling the ISA Contracts to ISAP which is based in San Diego, California, Defendants have marketed their product and services in California and in fact sold and provided their products and services to numerous residents throughout California, including without limitation to obligors from the following locations within California whom are among the member

reviews[3] posted on Defendants' website: San Diego County, Concord, Rancho Cucamonga, Murrieta, Garden Grove, Los Angeles (multiple), Sacramento, Hawthorne, Redondo Beach, Yorba Linda, Orangevale, Fontana, Modesto, and Westminster among others who may have purchased Defendants products and services, but not provided a review or provided a review that Defendants did not add to their website.

## FIRST CAUSE OF ACTION

### Intentional Misrepresentation

### (Against all Defendants)

42. ISAP incorporates each of the preceding paragraphs by reference as is fully set forth herein.

43. As set forth more fully above, Defendants Jordan and PreHired DE directly itself, as well as its predecessors in interest preHired SC and PreHired FL by and through Jordan, its founder and chief executive officer, represented via each of the Purchase Notices in 2020 and 2021 signed by Jordan and provided to Jeff Bernstein of ISAP that the ISA Contracts identified therein were performing, had satisfied one or more payments thereunder, and that payments were due and owing on an ongoing basis having satisfied the minimum income threshold.

44. Defendants Jordan and PreHired DE through its predecessors in interest preHired SC and PreHired FL by and through Jordan, its founder and chief executive officer, represented orally to Jeff Bernstein of ISAP in and around the end of 2019 and the beginning of 2020 that the ISA Contracts originated by Defendants, including their practices to implement and apply them, were enforceable, valid, binding, legal and Defendants had all such authority, power, or ability to execute, deliver, or perform the ISA Contracts, which did not violate any laws, rules, and regulations.

45. All of the above representations were false and Defendants knew they were false when made or made them recklessly without regard for their truth.

46. Defendants intended ISAP to rely on all of the above representations to wrongfully obtain and improperly retain ISAP's funds and ISAP in fact did reasonably rely on all of the above

---

[3] https://www.prehired.io/reviews (last visited June 28, 2022.)

representations of Defendants and tendered payment in reliance on same.

47. ISAP's reliance on all of the above representations was the direct, proximate, and substantial cause of ISAP's harm.

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation

### (ISAP Against All Defendants)

48. ISAP incorporates each of the preceding paragraphs by reference as is fully set forth herein.

49. As set forth more fully above, Defendants Jordan and PreHired DE directly itself, as well as its predecessors in interest preHired SC and PreHired FL by and through Jordan, its founder and chief executive officer, represented via each of the Purchase Notices in 2020 and 2021 signed by Jordan and provided to Jeff Bernstein of ISAP that the ISA Contracts identified therein were performing, had satisfied one or more payments thereunder, and that payments were due and owing on an ongoing basis having satisfied the minimum income threshold.

50. Defendants Jordan and PreHired DE through its predecessors in interest preHired SC and PreHired FL by and through Jordan, its founder and chief executive officer, represented orally to Jeff Bernstein of ISAP in and around the end of 2019 and the beginning of 2020 that the ISA Contracts originated by Defendants, including their practices to implement and apply them, were enforceable, valid, binding, legal and Defendants had all such authority, power, or ability to execute, deliver, or perform the ISA Contracts, which did not violate any laws, rules, and regulations.

51. All of the above representations were false and although Defendants may have believed the representations were true, Defendants had no reasonable grounds for believing the representation was true when Defendants made the representations.

52. Defendants intended ISAP to rely on all of the above representations to wrongfully obtain and improperly retain ISAP's funds and ISAP in fact did reasonably rely on all of the above representations of Defendants and tendered payment in reliance on same.

53. ISAP's reliance on all of the above representations was the direct, proximate, and substantial cause of ISAP's harm.

## THIRD CAUSE OF ACTION

### Concealment

### (Against All Defendants)

54. ISAP incorporates each of the preceding paragraphs by reference as is fully set forth herein.

55. On information and belief, Defendants intentionally failed to disclose and actively concealed the following facts from ISAP that were known to Defendants and which Defendants knew were not reasonably discoverable by ISAP: (i) certain of the Defaulted Receivables presented for purchase to ISAP and identified on the Purchase Notices were never performing and eligible for purchase under the Agreement or Purchase Notices in the first instance; (ii) several of the payments were not voluntarily made by the obligors, but by Defendants instead by manually initiating a withdrawal of payments from certain obligors using their banking information on file with negligent, reckless, and/or intentional disregard for whether the obligor had in fact satisfied the minimum threshold triggering payments, as a means of making it appear as though the ISA Contracts were performing and eligible for purchase; (iii) Defendants purported to trigger the minimum threshold by using estimated income figures that relied on unearned, potential commission, and manually adjusting the minimum threshold in order to qualify ISA Contracts for repayment purportedly because the obligor failed to accept a bona fide offer or collect payments from obligors who obtained employment in an unrelated and different field; (iv) the ISA Contracts originated by Defendants and their practices to implement and apply them, were unenforceable, invalid, not binding, illegal and Defendants had no such authority, power, or ability to execute, deliver, or perform the ISA Contracts, which violated laws, rules, and regulations; (v) the trademark for "Science-Based Sales" is owned by Defendant Joshua K. Jordan, the original registrant and an individual, such that the corporate entity did not have the right, title or authority to pledge it as "security for the payment and performance in full by Seller of Purchaser's Put Back right and Seller's other obligation to Purchaser" under the Agreement with ISAP; and (vi) on information and belief, on April 14, 2020 a cancelation was instituted for the trademark for "Science-Based Sales".

56. ISAP did not know of the above concealed facts.

57. Defendants intended to deceive ISAP by concealing the above-referenced facts, which had they been disclosed, ISAP reasonably would have behaved differently, including without limitation not paying Defendants for ineligible ISA Contracts that resulted in Defaulted Receivables.

58. ISAP was harmed and Defendants' concealment was the direct and proximate, direct, and substantial cause of ISAP's harm.

## FOURTH CAUSE OF ACTION

### Breach of Contract

### (Against All Defendants)

59. ISAP incorporates each of the preceding paragraphs by reference as is fully set forth herein.

60. ISAP and Defendants entered into and executed numerous Purchase Notices. ISAP as assignee, and Defendant PreHired DE as the successor in interest to preHired SC along with its alter ego Jordan, entered into the Agreement.

61. ISAP did all, or substantially all, of the significant things that the Purchase Notices and Agreement required it to do.

62. ISAP purchased ISA Contracts under the Agreement and Purchase Notices, paid Defendants for same, and tendered notices and demand to perform concerning the Put Back rights for Defaulted Receivables.

63. Defendants failed to perform and honor ISAP's Put Back Rights and further breached the Representations and Warranties of Seller set forth above in material ways at the purchase date, which representations and warranties were made an express precedent to ISAP's performance per paragraph 3 of the Agreement.

64. ISAP was harmed and Defendants' breaches of the contracts were a direct, proximate, and substantial cause of ISAP's harm.

## FIFTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith and Fair Dealing

65. ISAP incorporates each of the preceding paragraphs by reference as is fully set forth herein.

66. ISAP and Defendants entered into and executed numerous Purchase Notices. ISAP as assignee, and Defendant PreHired DE as the successor in interest to preHired SC along with its alter ego Jordan, entered into the Agreement.

67. ISAP did all, or substantially all, of the significant things that the Purchase Notices and Agreement required it to do.

68. All of the conditions required for Defendants performance had occurred as ISAP purchased ISA Contracts under the Agreement and Purchase Notices, paid Defendants for same, and tendered notices and demand to perform concerning the Put Back rights for Defaulted Receivables.

69. Defendants failed to perform and honor ISAP's Put Back Rights and further breached the Representations and Warranties of Seller set forth above in material ways at the purchase date, which representations and warranties were made an express precedent to ISAP's performance per paragraph 3 of the Agreement.

70. By doing so, Defendants did not act fairly and in good faith.

71. ISAP was harmed and Defendants' conduct, which was a direct, proximate, and substantial cause of ISAP's harm.

**PRAYER FOR RELIEF**

WHEREFORE, ISAP prays judgment as follows:

    a. For damages in an amount exceeding $2,500,000, subject to proof at the time of trial;

    b. For prejudgment interest for breach of contract damages from and after January 10, 2022, at the rate of 10% percent per year;

    c. For consequential damages, subject to proof at trial;

    d. For costs of suit incurred; and

    e. For such other and further relief as is just and proper.

/ / /

/ / /

Dated: July 1, 2022                                         JW HOWARD/ ATTORNEYS, LTD.

By:   <u>*/s/* Andrew G. Nagurney</u>
      Andrew G. Nagurney
      John W. Howard
      Andrew G. Nagurney
      Attorneys for STRATEGIC EDUCATION LOAN
      FUND, LLC and ISA PLUS, LLC