UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISA PLUS, LLC,<br><br>                                 Plaintiff,<br><br>v.<br><br>PREHIRED, LLC; JOSHUA K. JORDAN,<br><br>                                Defendants. | Case No.: 3:22-cv-01211-JAH-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANT JORDAN'S MOTION FOR SUMMARY JUDGMENT, [ECF No. 53], and;**<br><br>**(2) DENYING DEFENDANT JORDAN'S MOTION TO STRIKE, [ECF No. 70].** |

## I.    INTRODUCTION

Presently before the Court is Defendant Joshua Jordan's ("Jordan") motion for summary judgment. (ECF No. 53). Plaintiff ISA Plus, LLC ("ISAP" or "Plaintiff") filed a response in opposition to Jordan's motion for summary judgment, [ECF No. 66], and Jordan filed a reply in support of his motion, [ECF No. 67]. Also before the Court is Jordan's motion to strike Exhibits D and E from the Declaration of Jeffery A. Bernstein. (ECF No. 70). Plaintiff filed a response in opposition to Jordan's motion to strike, [ECF No. 78], and Jordan filed a reply in support of his motion to strike [ECF No. 82]. Upon

consideration of the record, the Parties' submissions, the evidence, and the applicable law, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Jordan's motion for summary judgment and **DENIES** Jordan's motion to strike.

## II.     BACKGROUND

Defendant Jordan founded Prehired LLC for the purposes of originating and entering into Income Share Agreements ("ISAs") with customers who were interested in financing the cost of educational and mentoring services. ISAs were then sold to various third parties. On January 7, 2020, Prehired entered into a Forward Purchase Agreement subject to various terms, conditions, and warranties with non-party Strategic Education Loan Fund, LLC dba SELF ("SELF") for the purchase and sale of ISAs. The Agreement was signed by Jordan as CEO of Prehired, and Jeffrey L. Bernstein, as the Founder and Managing Member of SELF. SELF purportedly orally assigned all of its rights and interests under the Forward Purchase Agreement (the "Agreement") with Prehired to ISAP. Both SELF and ISAP are owned by Bernstein. Prehired thereafter issued approximately twenty-six Purchase Notices under the Agreement to ISAP for nearly 400 ISAs, totaling $4,000,000. The Purchase Notices were executed over a two-year period, from January 2020 to January 2022. (ECF No. 66-2 at 22-131, Ex. B, Declaration of Jeffrey L. Bernstein ("Bernstein Decl.")).[1]

On January 10, 2022, ISAP issued a formal written demand for performance of the "Contract Repurchase Obligation per the Forward Purchase Agreement" for defaulting ISAs. (Bernstein Decl., Ex. C at 134-137). ISAP relies on provision 5.a. of the Agreement which provides,

///

///

///

---

[1] Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

> In the event: that any Obligor related to a Purchased Receivable ceases payments or becomes a non-payor for a period of longer than 120 days (a "Defaulted Receivable"), Purchaser has a right to put that Contract back to Seller at the Purchase Price less repayments received (Purchaser's "Put Back" rights).

(ECF No. 53-3 at 6, Ex. A).

On July 1, 2022, Plaintiff filed a complaint in the Superior Court of the State of California County of San Diego – Central Division, against Defendants Joshua Jordan, an individual, and Prehired, LLC, alleging (1) intentional misrepresentation; (2) negligent misrepresentation; (3) concealment; (4) breach of contract; and (5) breach of implied covenant of good faith and fair dealing. (ECF No. 1-2 ¶¶ 42-71, Ex. A, "Compl."). Plaintiff asserts that Defendants disregarded their contractual undertakings, and committed fraudulent and negligent misrepresentations in obtaining, and improperly retaining, the ill-begotten funds of Plaintiff. (*Id.* at ¶ 1). Defendants removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).[2]

### III.   LEGAL STANDARDS

**A.   Motion to Strike**

As an initial matter, "[t]here is no need to make a separate motion to strike" evidence at the summary judgment phase. Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment. Because motions to strike are limited to pleadings as defined by Federal Rule

---

[2] On September 27, 2022, Prehired filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. (ECF No. 8 at 1). Prehired thereafter filed a notice of automatic stay of the instant action pursuant to 11 U.S.C. § 362. (*Id.*) Plaintiff filed a Notice of Entry of Order Granting Relief From Automatic Stay Against Debtor/Defendant Prehired, LLC, stating that the U.S. Bankruptcy Court for the District of Delaware granted Plaintiff relief from the automatic stay, and requested the clerk enter default against Defendant Prehired. (ECF Nos. 23, 27). Default judgment was entered as to Defendant Prehired on April 5, 2024, as to the intentional misrepresentation, concealment, and breach of contract claims. (ECF No. 91).

of Civil Procedure 7(a), *see* Fed. R. Civ. P. 12(f), the Court construes Jordan's motion to strike as an evidentiary objection pursuant to Rule 56(c)(2).

Rule 26(a)(1) prescribes rules for initial disclosures, requiring that "a party must, without awaiting a discovery request, provide to other parties" "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Rule 26 does not necessarily require production of documents identified in the initial disclosures, but requires a sufficient description to "enable opposing parties (1) to make an informed decision concerning which documents might need to be examined, at least initially, and (2) to frame their document requests in a manner likely to avoid squabbles resulting from the wording of the requests." Fed. R. Civ. P. 26, advisory committee's note to 1993 amendment. Further, a party who has made a disclosure under Rule 26(a), must supplement or correct its disclosure in a timely manner if the party learns that in some material respect the disclosure was incomplete or incorrect if not otherwise made known during the discovery process. Fed. R. Civ. P. 26(e)(1)(A).

"Rule 37(c)(1) gives teeth to [disclosure] requirements" by precluding information at trial that was not properly disclosed pursuant to Rule 26(a). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). To that end, Rule 37(c)(1) provides that a party who violates Rule 26 "is not allowed to use that information [] to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). The Ninth Circuit has identified several factors to guide the determination of whether substantial justification and harmlessness exist, including, but not limited to: "(1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence." *Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1192 (9th Cir. 2022) (internal citations omitted). The party facing sanctions bears the burden of demonstrating the late disclosure

was substantially justified or is harmless. *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012).

**B.     Motion for Summary Judgment**

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses. Summary judgment or adjudication of issues is appropriate if depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1). A fact is material when it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party moving for summary judgment has "the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000); *see also Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018). "If a moving party fails to carry its initial burden of production . . . the nonmoving party may defeat the motion for summary judgment without producing anything." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire & Marine Ins.,* 210 F.3d at 1103. The nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)[3]; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In ruling on a motion for summary judgment, "courts may not resolve genuine disputes of fact in favor of the party

---

[3]     Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from citations.

seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Determining credibility and weighing evidence remain functions for a jury, not a judge on summary judgment. *Id.*

## IV. DISCUSSION

### A. Motion to Strike

On November 8, 2023, Jordan filed a motion to strike Exhibits D and E to the declaration of Jeffery Bernstein in support of ISAP's response in opposition to the motion for summary judgment. Exhibit D attached to the Bernstein declaration are email exchanges between Bernstein, Jordan, and Darius Goldman of Meratas discussing contract terms of a draft Amended Forward Purchase Agreement. Exhibit E is an Amended Forward Purchase Agreement between ISAP and Defendant Prehired.[4] Jordan argues the exhibits should be stricken because of Plaintiff's failure to timely disclose the documents during the discovery period. (ECF No. 70 at 2).

### i. Exhibit D

ISAP asserts Exhibit D was produced during the course of discovery on October 11, 2023, prior to the discovery cutoff date of November 7, 2023. (ECF No. 78 at 3).[5] Jordan does not meaningfully respond to this argument and merely reiterates the standard set forth in Rule 37(c)(1). (*See* ECF No. 82 at 3).

---

[4]   The Amended Forward Purchase Agreement attached as Exhibit E is unexecuted. According to ISAP, the inclusion of the Amended Forward Purchase Agreement is for the purpose of illustrating ISAP as being the "designee" of SELF. (ECF No. 78 at 11).

[5]   Jordan argues that ISAP failed to timely file an opposition to the motion to strike based on the withdrawal of the opposition and the subsequent re-filing after the filing date. Jordan's argument is not well taken, as ISAP was instructed by the Clerk of Court to re-file the submission based on a technical deficiency in the pleading. Jordan is not prejudiced by this outcome, as the earlier filed opposition is substantively identical to the re-filed submission, and he timely filed his reply to the motion to strike.

1    The email chain is Bates Stamped ISA 0008304 to 0008311. (ECF No. 66-2 at 139-158, Ex. D). According to the Declaration of Michelle D. Volk in Support of the Opposition to the Motion to Strike Exhibits and the Table of Documents Produced to Jordan attached to the declaration, two sets of documents were produced on October 11, 2023, "Banking records/ deposits PREHIRED" with Bates Stamp 0004305-0010498 and "Bank statement/ responses to Special Interrogatories from WA case; emails and docs produced from WA case" with Bates Stamp 0010499-0011318. (ECF No. 78-2 at 1, Ex. 1). Although the description of the email chain does not fall under "Banking records/ deposits PREHIRED," the Bates numbers for the emails fall within the range of documents propounded on October 11, 2023. Because Jordan does not seriously controvert ISAP's claim that the email chain was previously produced and disclosed prior to the discovery deadline, the Court accepts ISAP's representations as true. Accordingly, Jordan's motion to strike Exhibit D is **denied**.

      **ii.**     **Exhibit E**

ISAP claims it inadvertently failed to propound Exhibit E during the course of discovery but asserts that because it was filed as an exhibit to the Opposition to Jordan's motion for summary judgment on November 1, 2023, it was within the discovery deadline of November 7, 2023. (ECF No. 78 at 2). Even despite this apparent oversight, ISAP asserts that Exhibit E should not be stricken because the omission was not done in bad faith and Jordan has not been surprised or prejudiced by the delay in production. (*Id.*)

Jordan argues that ISAP's failure to disclose the Amended Forward Purchase Agreement prevents him from "testing its authenticity and value as evidence" and inhibits his ability "to fully respond to and rebut" the document. (ECF No. 70 at 3).

First, though fact discovery closed on April 28, 2023, per the Court's initial pre-trial order [ECF No. 11 at 2], the discovery cut-off date was extended by Court order to November 7, 2023 upon motion by Defendant Jordan. (ECF Nos. 45, 54). Although ISAP did not propound the unexecuted Amended Agreement before Jordan filed his motion for summary judgment, the discovery cut-off date had not lapsed when Plaintiff filed his

opposition to Jordan's motion for summary judgment. ISAP's argument is compelling. The most salient facts in support of ISAP's argument are that Plaintiff has produced over 11,000 pages in discovery to Jordan, and Federal Rule of Civil Procedure Rule 26(e)(2) prescribes a continuing duty to supplement discovery. Under these circumstances, the Court cannot find—and Jordan cannot claim—Plaintiff has been recalcitrant in propounding discovery, as there appears to be no history of noncompliance with ISAP's discovery obligations. Jordan cannot attempt to reap the strategic advantage of filing his motion for summary judgment prior to the discovery deadline and also claim he is prejudiced by his inability to "fully respond to and rebut this late-disclosed evidence." (ECF No. 70 at 3).

Second, to the extent that the late disclosure is improper under Rule 26, this failure does not warrant sanctions under Rule 37(c). The proposed Amended Forward Purchase Agreement was an attachment in an email chain and the subject of emails between Jordan, Bernstein, and Goldman of Meratas. As noted by ISAP, the email communication occurred through Jordan's Prehired email address josh@prehired.io. (ECF No. 78 at 7-8). Jordan does not contest his participation in the email chain (as the signature block in the email chain identified him), or his use of the email address. As such, Jordan cannot claim that he was unaware or blindsided by the unsigned Amended Forward Purchase Agreement as it was the subject of the emails to which he was a party and he actively participated it.

Third, Jordan asserts Exhibit E contradicts prior discovery. He specifically points to set one of ISAP's responses to interrogatory no. 3 instructing Plaintiff to, ""IDENTIFY all PERSONS who were involved in the alleged assignment of the FPA from SELF to ISAP and DESCRIBE how they were in the alleged assignment and any DOCUMENTS." (ECF No. 67-2 at 41). ISAP served the following response to interrogatory no. 3:

>3-1: Joshua Jordan and Jeffrey Bernstein were involved with the assignment of the FPA from SELF to ISAP.

>3-2: Jeffrey Bernstein initiated the assignment of the FPA from SELF to ISAP with Joshua Jordan's knowledge and express consent.

> 3-3: Documents related to the assignment include all Purchase Notices that were executed between ISAP and Prehired as called for in the Forward Purchase Agreement. In lieu of identifying each Purchase Notice, Plaintiff elects to produce documents under FRCP Rule 33(d). These documents were previously served on Mr. Jordan's counsel on September 27, 2022 (bates stamped documents: ISA 1 through 117.)

(ECF No. 67-2 at 42 (formatting altered)).

Jordan suggests ISAP's response identifying Jordan and Bernstein as participants in the assignment of the Forward Purchase Agreement from SELF to ISAP contradicts the contents of Exhibit E. Not so, as the unsigned Amended Forward Purchase Agreement discussed in Exhibit E does not purport to memorialize the assignment from SELF to ISAP and is therefore unrelated to interrogatory no. 3.

Finally, Jordan's assertion that the inclusion of Exhibit E will inform whether he prevails at summary judgment or whether his case proceeds to trial, which would "impos[e] substantial burdens on" [ECF No. 82 at 3] him does not establish prejudice, as it relies too heavily on hypotheticals and protests the normal burdens of litigation. Jordan will have an opportunity to dispute the evidence, proffer his own evidence to rebut, and cross-examine Plaintiff and any other relevant party regarding the contents of the document at trial. Accordingly, the Court does not find that Exhibit D unfairly surprises or prejudices Jordan to justify its preclusion. Jordan's motion to strike is **denied**.

///
///
///
///
///
///
///
///
///

B.	**Motion for Summary Judgment**[6]

Jordan moves for summary judgment to dismiss all claims in the complaint, arguing (1) that ISAP was not a party to the Forward Purchase Agreement between Prehired and SELF; (2) the alleged assignment from SELF to ISAP was unauthorized and in violation of the Agreement; (3) Jordan cannot be held personally liable under an alter ego theory; and (4) ISAP's failure to timely respond to Jordan's request for admissions renders the matters admitted.

i.	**Requests for Admissions**

As a preliminary matter, Jordan relies heavily on ISAP's purported failure to respond to request for admissions to establish an absence of material facts. However, in an order dated November 17, 2023, Magistrate Judge Jill L. Burkhardt found the RFA's were improperly served on ISAP, and therefore the requests for admission could not have been "deemed admitted" by operation of law under Federal Rule of Civil Procedure 36(a). (ECF No. 74). As such, any argument in support of Jordan's motion based on the purported admissions is denied.

ii.	**Jordan's Declaration**

ISAP urges the Court to disregard Jordan's declaration as self-serving. (ECF No. 66 at 13-14). Because declarations are often inherently self-serving, "the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 498 (9th Cir. 2015). Although Jordan's brief affidavit is conclusory and lacks detailed facts, given the liberal

---

[6] Jordan initially filed his motion for summary judgment on May 31, 2023. (ECF No. 21). After the motion for summary judgment and a subsequently filed motion to strike was fully briefed, Jordan withdrew the motion for summary judgment and submitted the instant amended motion. The amended motion rebuts arguments in the previously filed opposition to the motion for summary judgment. It is clear that Jordan is using procedural gamesmanship as a strategy in an attempt to prevail and gain an advantage over ISAP. The Court strongly admonishes the parties against any gamesmanship going forward.

standard afforded to pro se litigants the Court liberally construes the motion and declaration. The Court notes, however, that "liberal construction does not work as a substitute for actual evidence" at this stage of the proceedings. *James v. Hayward Police Dept.*, Case No. C 10–4009 SI (pr), 2012 WL 1895952, *4 n.1 (N.D. Cal. May 23, 20212).

### iii. Unauthorized Assignment

#### a. Unauthorized Assignment as an Affirmative Defense

ISAP asserts that Jordan's unauthorized assignment is a factual dispute that cannot be determined at summary judgment, and in any event, is an affirmative defense that was not plead in his answer and is therefore waived. (ECF No. 66 at 13).

The unauthorized assignment of the Agreement is an affirmative defense Defendants failed to assert in their Answer to the Complaint and raised for the first time in the motion for summary judgment. (*See* ECF No. 4). Generally, "Federal Rule of Civil Procedure 8(c) requires defendants to plead affirmative defenses in answer to [a] plaintiff's complaint. Defenses not so raised are waived." *Taylor v. United States*, 821 F.2d 1428, 1432 (9th Cir. 1987). However, given that ISAP does not claim prejudice by this late assertion, the defense is not waived. *Paine v. City of Lompoc*, 265 F.3d 975, 980 n.1 (9th Cir. 2001) (finding no waiver where affirmative defense raised for first time in motion for summary judgment where plaintiff did not argue prejudice).

#### b. Oral Assignment

Jordan argues that the assignment between SELF and ISAP is invalid because the Forward Purchase Agreement is between SELF and Prehired, and any purported assignment is in violation of the terms of the Agreement. (ECF No. 53 at 9). To that end, Jordan asserts "there is no dispute of fact that ISAP failed to forward evidence that an assignment from SELF to ISAP was executed and that ISAP could even rely on the Agreement attached as an exhibit to find Jordan personally liable[.]" (*Id.*) In opposition, ISAP asserts that despite Jordan's self-serving declaration, the uncontroverted evidence proves that the oral assignment from SELF to ISAP was authorized, as "Jordan expressly, repeatedly, and in writing authorized the assignment to ISA Plus." (ECF No. 66 at 14).

First, it bears noting that Jordan's assertion that ISAP failed to put forward evidence of an assignment improperly places the onus on non-moving party ISAP to produce evidence for its claims, in opposition to the summary judgment standard. *See Nissan Fire & Marine Ins.*, 210 F.3d at 1005.

Second, contrary to Jordan's claim, the plain terms of the Forward Purchase Agreement does not contain any explicit language requiring an assignment be in writing and signed by both SELF and Prehired. Under New York law,[7] "a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992). Here, the assignment clause provides that the Forward Purchase Agreement,

> shall become effective upon mutual execution and delivery by the Parties, and shall be binding upon and inure to the benefit of Seller and Purchaser and their respective successors and permitted assigns; any unauthorized or attempted assignment in violation of this sentence shall be null and void.

(ECF No. 53-3 at 9, Ex. A). The Forward Purchase Agreement does not otherwise specify a procedure for authorizing an assignment, and New York law does not require a written agreement to establish a valid assignment. *Miller v. Wells Fargo Bank Intern. Corp.*, 540 F.2d 548, 557 (2d Cir. 1976). As such, Jordan's assertion that any assignment was void for a lack of a signed writing is rejected. *R/S Assoc. v. New York Job Development Authority*, 98 N.Y.2d 29, 32 (2002) ("We have long adhered to the 'sound rule in the construction of contracts, that where the language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language.' ") (citing *Springsteen v. Samson*, 32 N.Y. 703, 706 (1865)).

Third, Jordan does not carry his burden for summary judgment. Under New York law, "an assignment . . . may be made without writing or delivery of any written statement of the claim assigned, . . . provided only that the assignment is founded on a valid

---

[7] The Agreement specifically provides that New York law governs.

consideration between the parties." *Risley v. Phenix Bank*, 83 N.Y. 318, 328 (1881). As such, the existence of an oral assignment can be corroborated here through the Parties' conduct. Although Prehired and SELF were indeed the signatories to the January 7, 2020 Forward Purchase Agreement, subsequent Purchase Notices named Prehired as the seller and ISAP as the purchaser in the transactions. (*See e.g.* ECF No. 66-2 at 22, Ex. B[8]). In fact, 23[9] total Purchase Notices were executed between Prehired and ISAP from January 7, 2020 to January 3, 2022. (ECF No. 66-2 at 22-131, Ex. B). The Purchase Notices all "refer[] to the [] certain Forward Purchase Agreement, dated as of January 7, 2020 . . . as between [Prehired] and ISA Plus, LLC []." (*Id.*) The Purchase Notices also refer and rely on the Forward Purchase Agreement to define "terms used and not otherwise defined" in the Purchase Notices and states the Purchase Notices are "made pursuant to, and in accordance with, all terms and conditions of the Purchase Agreement." (*Id.*) The Purchase Notices were signed by Jordan, and ISAP paid approximately $4,000,000 in consideration. (*Id.*) As such, the Forward Purchase Agreement and the Purchase Notices taken together plainly present an issue of fact as to whether there was a valid oral assent to the assignment of the Agreement, and summary judgment is inappropriate. *Commander Oil Corp. v. Advance Food Service Equipment*, 991 F.2d 49, 53 (2d Cir. 1993) ("[C]ontracts should be interpreted together if 'the parties assented to all the promises as a whole, so that there

---

[8]  Attached as an exhibit is a Form Purchase Notice as an exemplar for the Parties, and notes Prehired and SELF as the seller and purchaser, respectively, [ECF No. 66-2 at 16, Ex. A] and includes a Certificate of Sale between the Parties, [ECF No. 66-2 at 18, Ex. A]. However, given these are exemplars, the forms are of no consequence at this juncture in light of the numerous Purchase Notices executed subsequent to the Forward Purchase Agreement.

[9]  Because the April Purchase Notice was amended twice, the Court counts each Purchase Notice as demonstrative. (*See* ECF No. 66-2 at 88-105).

would have been no bargain whatever if any promise or set of promises had been stricken.' " (citing 6 Williston, Contracts, § 863, at 275 (3rd ed. 1970)).[10]

### iv.   Piercing the Corporate Veil/Alter Ego[11]

Jordan posits that even upon a finding of a valid assignment from SELF to ISAP, he is not individually liable. In support of this argument, Jordan also states he did not make any representations that would "rise to such a level that would deem it appropriate for the Court to pierce the corporate veil." (ECF No. 53 at 11). Jordan states "Bernstein tried to

---

[10]   Notably, Jordan asks the Court to "consider that the parties operated based on" an unsigned Forward Purchase Agreement between Prehired and ISAP, also dated January 7, 2020, that "mirrored the [signed] Purchase Agreement[.]" (ECF No. 53 at 12). The material difference, according to Jordan, between the signed Agreement between SELF and Prehired, and the unsigned agreement between ISAP and Prehired that the Parties allegedly operated under was the inclusion of the "Reject Rights" provision which allows Prehired to reject SELF/ISAP's right to put the income share contract back to Prehired for the purchase price, less repayments received, in the event a customer "ceases payments or becomes a non-payor for a period of longer than 120 days." (ECF No. 53-3 at 18).

Jordan relies on this unsigned agreement in order to demonstrate a lack of individual liability, but he also undermines his claim that he is not liable under *any* Agreement. The Parties only acknowledge signing the Agreement as between Prehired and SELF. The Parties do not contest that the Agreement as between Prehired and ISAP (dated January 7, 2020), [ECF No. 53-3 at 18, Ex. B], or as between Prehired and ISAP as the designee of SELF (dated February 2020), [ECF No. 66-2 at 148, Ex. E], are unexecuted. That Jordan has portrayed the unsigned contracts as evidence of an invalid assignment under the signed Agreement does not change the Court's analysis. However, Jordan's argument does not appear entirely without merit as to which contract is operative. The signed January 7, 2020, Purchase Notice sets a price per receivable of $10,000. [ECF No. 66-2 at 22, Ex. B]. However subsequent purchase notices reflect variable price per receivables of $12,000 [*id.* at 34, 36, 41, 47, 53, 58, 63, 68], $12,500, [*id.* at 25, 28, 31], and $15,000 [*id.* at 39, 44, 73, 78, 83, 88, 94, 99, 106, 111, 116, 120, 124, 128]. The $12,500 price per receivable is corroborated by the email exchange between Jordan, Bernstein, and Darius Goldman and the unsigned February 2020 agreement, [*see* ECF No. 66-2 at 13, Ex. D] but does not account for the unsigned January 7, 2020 agreement attached as an exhibit to Jordan's motion for summary judgment. To the extent it is at issue, the operative contract is a genuine issue of material fact for a jury to determine.

[11]   Courts interchangeably refer to the alter ego theory as "piercing the corporate veil." *See, e.g., NetJets Aviation, Inc. v. LHC Commc'n, LLC*, 537 F.3d 168, 176 (2d Cir. 2008).

execute a new agreement that mirrored the Purchase Agreement, which would be between Prehired and ISAP" and "the clause that ISAP entirely relies upon to pierce the corporate veil (the repurchase clause) is not even required in the draft of the unsigned agreement between Prehired and ISAP." (*Id*. at 12).  On the one hand, Jordan asserts that Plaintiff cannot rely on the original Purchase Agreement or the unexecuted Agreement dated February 2020, and on the other hand, he states all subsequent purchases between Prehired and ISAP were made pursuant to the unexecuted Agreement. (*Id*. at 12-13).  In rebuttal, ISAP argues Jordan is the alter-ego of his companies Prehired, Prehired Recruiting LLC, Prehired FL, and Prehired Accelerator based on a lack of corporate formalities. (ECF No. 66 at 23-24).  For instance, according to ISAP, the Forward Purchase Agreement pledged the trademark "Science-Based Sales," which is held in Jordan's individual name. (*Id*. at 23).  ISAP also argues that Prehired Recruiting LLC "was [] tasked with collecting defaulted ISA contracts" and ultimately sued 300 consumers for defaulting on their ISAs with Prehired, and Prehired Accelerator "was created in Florida on September 1, 2021, to hold ISA's." (*Id*. at 23).  Prehired Recruiting and Prehired FL both list the same principal place of business in Tampa, Florida, and Prehired and Prehired Recruiting share the same office in Charleston, South Carolina. (*Id*. at 24).

Piercing the corporate veil is a state law doctrine. Under New York choice of law principles, "[t]he law of the state of incorporation determines when the corporate form" will be pierced. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).  Because Prehired is a South Carolina limited liability company, South Carolina law controls.[12]

---

[12]   Jordan cites to New York law to dispute ISAP's alter ego theory [ECF No. 53 at 14] and ISAP cites to California law [ECF No. 66 at 21].  Notwithstanding the *Fletcher* Court's choice of law rule as it pertains to piercing the corporate veil, "some courts have . . . adopted the law the parties agree to employ rather than the law of the state of incorporation where there is no substantive difference between the two state law approaches to piercing the corporate veil." *Wausau Business Ins. Co. v. Turner Const. Co.*, 141 F.Supp.2d 412, 417 (S.D.N.Y. 2001) (collecting cases).

In South Carolina, an action to pierce the corporate veil is one in equity. *See Sturkie v. Sifly*, 280 S.C. 453, 313 (S.C. Ct. App. 1984). The "power to pierce the corporate veil, though, is to be exercised 'reluctantly' and 'cautiously' and the burden of establishing a basis for the disregard of the corporate fiction rests on the party asserting such claim." *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 683 (4th Cir. 1976). In determining whether to pierce the corporate veil, courts apply a two-pronged test. The first prong involves evaluating eight factors: (1) whether the corporation was undercapitalized; (2) whether the members failed to observe corporate formalities; (3) whether the corporation failed to pay dividends; (4) whether the corporation was insolvent; (5) whether the dominant stockholder siphoned off funds; (6) whether the officers and/or directors were nonfunctioning; (7) whether the corporation kept adequate records; and (8) whether the corporation was merely a façade for the dominant stockholders. *Sturkie v. Sifly*, 280 S.C. at 457 (citing *DeWitt Truck Brokers, Inc.*, 540 F.2d at 686-87). The second prong "requires that there be an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the individuals." *Id.* at 458.

Jordan's motion does not present any evidence or circumstances to vindicate him from allegations of not maintaining corporate formalities. Instead, he makes factual inferences and conclusory allegations to tenuously support his argument. Taken in the light most favorable to ISAP, the record contains evidence that Jordan and Prehired operated as a single entity. ISAP presented evidence demonstrating disputed material facts as to Jordan's maintenance of the corporate form. The following facts underpin ISAP's argument: (1) the trademark "Science-Based Sales," which is held in Jordan's individual name, was pledged in the Forward Purchase Agreement; (2) Jordan used Prehired LLC and Prehired Recruiting fluidly, with the latter being used to hold ISAs or sue consumers for defaulting on their ISAs; (3) Prehired Recruiter, Prehired Accelerator, and Prehired LLC also used the same office equipment, licenses, contracts with internet services providers and phone companies; (4) for convenience, Jordan also used the same email for Prehired LLC that he did for Prehired Accelerator and Prehired Recruiting; (4) before all entities

went bankrupt in 2020, Prehired made payments to Jordan totaling $386,300, Prehired Recruiting, LLC paid him $71,000 and, Prehired Accelerator, LLC paid him $88,000; Prehired was capitalized with between $1,000-$25,000 at the time of formation, while Jordan paid himself a net income of $1,074,120.77 from Prehired LLC from May 2017 through July 2022 [ECF No. 66-1 at 50]; and (5) instead of only repurchasing nonperforming ISAs pursuant to the "Put Back" provision, Jordan negotiated an agreement to provide "new ISAs to [ISAP] to offset a portion of its balance . . . " [Bernstein Decl. ¶ 11]. These facts taken together suggest undercapitalization and demonstrate that the various Prehired companies were a single economic entity with disregard of corporate formalities.

Furthermore, ISAP's claims that the "majority of ISAs unceremoniously failed immediately," Jordan became aware of the illegality of running a private vocational school without a license as early as July 8, 2020 [ECF No. 66-1 ¶ 7, Declaration of Andrew G. Nagurney], and Jordan siphoning funds from his businesses before declaring bankruptcy also informs the Court's opinion that there is an element of unfairness if the corporate veil is not pierced, satisfying the second prong of the test articulated in *Sturkie*. *See Drury Dev. Corp. v. Found. Ins. Co.*, 380 S.C. 97, 102 (S.C. 2008) ("The essence of the fairness test is simply that an individual businessman cannot be allowed to hide from the normal consequences of carefree entrepreneuring by doing so through a corporate shell.") (quoting *Dumas v. InfoSafe Corp.*, 320 S.C. 188 (S.C. Ct. App. 1995). Drawing all reasonable inferences in ISAP's favor and in light of the evidence and the standard at the summary judgment stage of litigation, the Court denies Jordan's motion for summary judgment on this issue.

v. **Remaining Claims**

Jordan seeks summary judgment on ISAP's claims for intentional misrepresentation, negligent misrepresentation, concealment, and breach of the implied covenant of good faith and fair dealing. The Court will discuss each argument in turn.

///

### a. Intentional Misrepresentation and Concealment

Jordan seeks summary judgment on the intentional misrepresentation[13] and concealment[14] claims based on a purported lack of privity between the Parties. Jordan posits that because ISAP was not a party to the original Forward Purchase Agreement between SELF and Prehired, ISAP cannot impute reliance on statements made by Jordan to SELF. (ECF No. 53 at 7-8).

Jordan's argument is unpersuasive. As discussed above, the Court has determined a dispute of material fact as to the assignment of the Forward Purchase Agreement. Even by Jordan's own admission, the Parties operated under the terms of the unexecuted Amended Forward Purchase Agreement and executed numerous Purchase Notices. As such, whether the Forward Purchase Agreement was orally assigned from SELF to ISAP, and whether Jordan is liable for intentional misrepresentation and concealment are questions of fact for the jury.

### b. Negligent Misrepresentation

Jordan moves for summary judgment on the negligent misrepresentation claim arguing "it directly contradicts [ISAP's] cause of action for intentional misrepresentation" because Plaintiff relies on the "same facts" to support both claims for negligent and intentional misrepresentation. (ECF No. 53 at 6 n.1). ISAP asserts that under Federal Rule of Civil Procedure 8(d), alternative and inconsistent facts and theories of relief can be

---

13. Negligent misrepresentation requires a plaintiff to show "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000) (citations omitted).

14. To prevail on a claim for fraudulent concealment a plaintiff must show "(1) nondisclosure of (2) material facts, in the face of (3) a duty to disclose, (4) scienter, (5) reliance, and (6) damages." *In re New York Trap Rock Corp.*, 42 F.3d 747, 754 (2d Cir. 1994).

plead, and in any event, the question of Jordan's intent (that is, whether he intentionally or negligently misrepresented facts) cannot be determined on summary judgment. (ECF No. 66 at 19-20).

Because ISAP is entitled to make alternative pleadings and inconsistent statements pursuant to Rule 8(d), whether Jordan's misrepresentations were done negligently or intentionally are alternative theories from which a jury must make a factual determination. As such, Jordan's motion for summary judgment is denied as to the negligent misrepresentation claims.

### c.  Breach of the Implied Covenant of Good Faith and Fair Dealing

Jordan argues ISAP's breach of the implied covenant of good faith and fair dealing fails where it relies on the same facts as the breach of contract claim. (ECF No. 53 at 11 n.3).  ISAP fails to directly address Jordan's argument.

It is well settled that "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).  Plaintiff fails to allege any facts or provide any argument that the damages sought go beyond or differ in any way from the breach of contract claim.  As such, ISAP's claim for a breach of the implied covenant of good faith and fair dealing is dismissed as duplicative.

### V.  CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Defendant Joshua Jordan's motion for summary judgment, and **DENIES** Defendant Jordan's motion to strike Exhibits D and E from the Bernstein declaration.

**IT IS SO ORDERED.**

DATED: September 30, 2024

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE