Joshua Jordan, PRO SE
6650 Rivers Ave., STE 100
Charleston, SC, 29406
joshlegalstuff@gmail.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ISA PLUS, LLC | Case No.: 3:22-cv-01211-JAH-JLB |
| Plaintiff, | |
| v. | **JORDAN'S AMENDED DECLARATION IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, TO VACATE DEFAULT JUDGMENT AGAINST PREHIRED, LLC, AND FOR COSTS AND EXPENSES** |
| Prehired, LLC and JOSHUA K JORDAN Defendants. | |

Joshua Jordan declares the following under penalties of perjury:

1.  If called to testify in this case, I, Defendant Joshua Jordan ("Jordan"), would testify as follows.

2.  I make this declaration in support of the Defendant Jordan's Motion To Dismiss For Lack Of Subject Matter Jurisdiction, To Vacate Default Judgment Against Prehired, LLC, And For Costs And Expenses.

3.  On January 2, 2020, as CEO of Prehired, LLC ("Prehired"), I signed a Simple Agreement for Future Equity (SAFE) with Santhosh "Sunni" Sukumar ("Sunni" or "Sukumar"), granting him the right to earn an equity interest in Prehired. By January 2, 2021, Sukumar had earned a 1.25% ownership interest, and by the filing of Plaintiff's complaint on July 1, 2022, his ownership stake had increased to 3.125%.

4.  As of the filing of this Complaint, Sukumar was and is a member and owner of Prehired, in addition to being a resident of the state of California.

2

5.  In 2021, the year immediately preceding the filing of this lawsuit, I earned $435,627 as CEO of Prehired, LLC, which equates to approximately $226.89 per hour based on standard full-time employment calculations. Prior to this litigation, Prehired was experiencing significant growth, and my income trajectory was projected to increase substantially in 2022 before being disrupted by the need to defend against this illegal lawsuit.

6.  On April 5, 2022, Prehired, LLC assigned all its rights, titles, and interests in any and all claims related to ISA Plus, LLC, Strategic Education Loan Fund, LLC, and Jeffrey Bernstein to me personally. This Assignment of Claims was submitted to this Court in Dkt. No. 93-3 (Exhibit C - Assignment of Claims). As such, I have standing to pursue claims not only in my individual capacity but also as the assignee of Prehired's claims. Because the loan to Prehired was never repaid, the total consideration ended up being $55,500.

7.  In subsequent bankruptcy proceedings (Case No. 22-11007-JTD in the District of Delaware Bankruptcy Court), the court-appointed trustee valued Prehired's contract assets at approximately $40 million, confirming the substantial economic value of the enterprise I had built prior to this litigation.

8.  At the time of filing this lawsuit, ISA Plus, LLC ("ISAP" or "Plaintiff") knew or should have known that Prehired had an ownership interest held by Sukumar through the SAFE.

9.  On or about March 31, 2023, Plaintiff ISAP received documents from the Prehired bankruptcy trustee pursuant to their motion filed on March 21, 2023. Among these documents was Sukumar's ownership agreement, clearly marked with the trustee's reference number 'PH-TRUST-00688627' in the bottom right corner (Exhibit A to this filing). This document explicitly established Sukumar's ownership interest in Prehired and was in Plaintiff's possession approximately two months before they moved for default judgment against Prehired on June 1, 2023.

10. On or about March 31, 2023, Plaintiff ISAP received documents from the Prehired bankruptcy trustee, including the ownership agreement with Sukumar, which clearly showed his ownership stake in Prehired. These documents, clearly marked with the trustee's reference number in the bottom right corner, explicitly showed Sukumar's ownership interest in Prehired.

11. During Sunni Sukumar's deposition on July 7, 2023, as part of the Washington Attorney General's case (case number 22-2-08651-3-SEA), ISAP's managing member, Jeffrey Bernstein, and its counsel, Andrew Nagurney, were present. At this deposition, the ownership agreement showing Sukumar's ownership stake in Prehired was introduced as Exhibit 2 early in the proceedings. Despite this clear and direct evidence, Plaintiff failed to disclose this critical jurisdictional fact to the Court and continued to prosecute the case as if subject matter jurisdiction remained intact despite knowing otherwise.

12. Despite this knowledge, Plaintiff failed to disclose this information to the Court, and continued to prosecute this case, despite knowing that there was no complete diversity of citizenship, thus depriving this Court of subject matter jurisdiction.

13. As a first-time pro se litigant with no legal training, my understanding of jurisdictional concepts has evolved gradually throughout this litigation.

14. On October 2, 2024, I filed a Motion to file a Counterclaim and Third Party Complaint with this court (Dkt No. 93).

15. On October 3, 2024, this Court denied my motion for leave to file a third-party complaint and counterclaim (Dkt. No. 94). This denial prompted me to research alternatives, leading me to draft a complaint in the District of South Carolina (Case No. 4:24-cv-05775).

16. On October 10, 2024, the SC complaint was filed. While preparing that complaint, I had to specifically address jurisdictional pleading requirements in paragraphs 6-9 of that document, which enhanced my general awareness of jurisdictional concepts. However, my understanding at that time was limited to basic jurisdictional pleading requirements and mimicking other

4

documents used in other proceedings, not fully understanding specific doctrine of subject matter jurisdiction and its fundamental impact on court proceedings.

17. On January 10, 2025, the court determined that the Defendants Bernstein, ISAP, and SELF in that case (Case No. 4:24-cv-05775-JD-TER) may be evading service, and the Court permitted service through publication.

18. On March 14, 2025, because of no response being filed after proper service, I was awarded a default against all the Defendants.

19. On March 19, 2025, ISAP and the other Defendants decided to participate and move to vacate the default, which prompted me to begin working every single day to analyze both cases in South Carolina and in this Court.

20. This comprehensive review required me to reexamine the entire procedural history of both cases, including this California litigation. It was during this intensive research period in March 2025 that I discovered and fully comprehended the specific jurisdictional defect involving Sukumar's California citizenship and its effect on diversity jurisdiction.

21. Since assuming my own defense pro se and as of the filing of this Motion and accompanying documents, I have meticulously documented 305 hours spent researching legal issues, drafting motions and responses, and preparing for proceedings in this case. This substantial time commitment diverted my attention from income-generating activities and required me to develop legal expertise outside my professional field.

22. As a pro se litigant with no formal legal training, I am navigating this process and learning legal concepts as I proceed. Every motion or brief I file, I learn many things for the first time and rely on the research I find when looking up the specific issues facing in those moments. I was not aware of the importance of subject matter jurisdiction and diversity of citizenship and how it affects this case until March 2025. I know that I do make mistakes in some of these proceedings but based on what I now know as of this filing, I am confident this case must be dismissed.

23. Based on my understanding of subject matter jurisdiction, and the fact that Sukumar is a California resident and an owner of PreHired, LLC, complete diversity between the parties does not exist. Therefore, this Court lacks subject matter jurisdiction.

24. Throughout the formation and operation of Prehired, the company's initial operating agreement, drafted by counsel, designated me as the "sole member" and "sole owner". This designation created a reasonable, albeit legally inaccurate, understanding that persisted throughout this litigation. I operated under the good-faith belief that my contractually-defined status as "sole member" remained operative despite subsequent equity transactions, including the SAFE agreement with Sukumar. I was unaware that equity issuances to Sukumar fundamentally altered my status from 'sole member' to 'majority member' for jurisdictional purposes.


Respectfully submitted on March 25, 2025.


By: /s/ Joshua Jordan
Joshua Jordan, Pro Se
6650 Rivers Ave. STE 100
Charleston, SC, 29406
843.790.3989
joshlegalstuff@gmail.com