UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISA PLUS, LLC,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>PREHIRED, LLC; JOSHUA K. JORDAN,<br><br>　　　　　　　Defendants. | Case No.: 3:22-cv-01211-JAH-JLB<br><br>**ORDER:**<br>**(1) DENYING DEFENDANT'S MOTION TO VACATE DEFAULT JUDGMENT;**<br><br>**(2) DENYING DEFENDANT'S MOTION TO DISMISS; AND,**<br><br>**(3) DENYING DEFENDANT'S REQUEST FOR SANCTIONS.**<br><br>**[ECF No. 95]** |

**INTRODUCTION**

　　Pending before the Court is Defendant Joshua K. Jordan's (hereinafter, "Jordan") Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Motion to Vacate Default Judgment, as well as a request for sanctions. ECF No. 95 ("Motion" or "Mot."). Plaintiff ISA Plus, LLC ("Plaintiff") filed a Response in Opposition. ECF No. 97 ("Opposition" or "Opp'n"). Jordan subsequently filed a Reply. ECF No. 98 ("Reply"). The Court issued an order vacating the hearing on Jordan's motions pursuant to Civil Local Rule 7.1.d.1. ECF No. 99. On June 12, 2025, the Court issued an order requesting supplemental briefing

to determine whether the services contract attached to Jordan's motions is governed by California contract law. ECF No. 100. Jordan responded by filing supplemental briefing, (ECF No. 101), as did Plaintiff, (ECF No. 102).[1] Upon careful review of the parties' briefing and the relevant law, the Court hereby **DENIES** Jordan's Motion to Vacate Default Judgment, **DENIES** Jordan's Motion to Dismiss, and **DENIES** Jordan's request for sanctions.

## BACKGROUND

On January 2, 2020, more than two years before this case was removed to federal court, Jordan (as CEO of Prehired, LLC) signed a services contract with Santhosh Sukumar. ECF No. 95-3 ("Jordan Decl.") ¶ 3. This agreement dictated Sukumar would provide marketing services to Prehired, LLC (hereinafter, "Prehired"), in exchange for two forms of compensation: (1) a monthly revenue share of 5%, and (2) a Simple Agreement for Future Equity ("SAFE"), which would allow Sukumar to earn future equity in Prehired upon the event of a future sale. ECF No. 95-1 ("SAFE") at 1.[2]

---

[1] The Court ordered supplemental briefing to provide the Court with "information it needs . . . to determine the applicable law governing the SAFE contract." ECF No. 100 at 3. Jordan filed a nine-page response on matters substantially broader than the scope of the Court's order. *See* ECF No. 101. Plaintiff objects to the substantive briefings on the merits of this case contained in Jordan's supplemental briefing, which are not responsive to which state's law governs the SAFE and reach well-beyond the scope of the Court's order for supplemental briefing, including:
 (i) Section III, including all subparts thereto, of Defendant Joshua Jordan's Supplemental Brief in Response to Court Order;
 (ii) Paragraphs 4, 5, 6, 7, and 8 of Santosh Sukumar's Supplemental Declaration; and
 (iii) Joshua Jordan's Supplemental Declaration in its entirety.
ECF No. 102 at 2. This Court agrees with Plaintiff. The Court also finds Section IV, and the first two sentences of Section V, of Jordan's supplemental briefing are beyond the scope of the Court's order. As such, Sections III and IV, and the first two sentences of Section V, are **STRICKEN** and will not be considered in deciding the merits of Jordan's motion.

[2] Unless otherwise stated, page numbers referenced herein refer to page numbers generated by the CM/ECF system.

On July 1, 2022, Plaintiff filed this case in San Diego County Superior Court against Jordan and Prehired (collectively, "Defendants"), alleging claims of intentional misrepresentation, negligent misrepresentation, concealment, breach of contract, and breach of the implied covenant of good faith and fair dealing. ECF No. 1-2 ("Complaint"). However, Defendants removed the case to this Court on August 8, 2022, based on diversity jurisdiction. ECF No. 1 ("Removal"). In the Notice of Removal, Defendants represented to the Court and opposing counsel: "Prehired, LLC is a single member LLC whose sole member, Joshua Jordan is a resident of the State of South Carolina." Removal at 3. This representation was made on August 18, 2022. Based on Defendants' representation in the Notice of Removal, there was no objection to subject-matter jurisdiction by Plaintiff or the Court. Indeed, Prehired's "initial operating agreement, drafted by counsel, designated [Jordan] as the 'sole member' and 'sole owner'" of Prehired. ECF No. 95-3 ("Jordan Decl.") ¶ 16.

On March 22, 2023, the Court granted a motion to withdraw submitted by Defendants' counsel. Neither Jordan nor Prehired found new representation, and Jordan continued his defense of the case *pro se*. Prehired, on the other hand, could not proceed without representation as a corporate entity. *See Rowland v. California Men's Colony, United II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993). Therefore, after Prehired failed to secure counsel, Plaintiff requested an entry of default against Prehired on June 6, 2023, and the Court directed the Clerk of Court to enter default on June 22, 2023. ECF No. 32. Subsequently, a Default Judgment was entered in favor of Plaintiff against Prehired in the amount of $2,643,068.09. ECF Nos. 90, 91.

Presently, nearly three years after this case was removed to federal court, and after summary judgment and default judgment against Prehired, Jordan moves to dismiss this case for lack of subject matter jurisdiction claiming Sukumar, Prehired's "1099 contractor" hired to provide marketing services, is an additional member of Prehired and destroys complete diversity. *See generally* Mot. According to Sukumar, Sukumar is "and was a citizen and resident of the state of California before the filing of the Complaint on July 1,

2022." ECF No. 95-2 ("Sukumar Decl.") ¶ 4. Plaintiff is also a citizen of California. Opp'n at 2. In addition to moving for dismissal, Jordan moves the Court to vacate the default judgment against Prehired and impose sanctions against Plaintiff for failing to disclose the alleged jurisdictional defect.

## DISCUSSION

### I. Motion to Vacate Default Judgment

As a threshold issue, Plaintiff claims Jordan does not have standing to move this Court to set aside the Default Judgment against Prehired. Opp'n at 8-9. Jordan is proceeding *pro se* and is representing himself in this matter. Mot. at 1. However, Jordan claims Prehired "assigned all its rights, titles, and interests in any and all claims related to [Plaintiff] . . . to Jordan personally," thereby granting Jordan "standing to pursue claims not only in his individual capacity but also as the assignee of Prehired's claims." *Id*. at 3.

"It has been law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland*, 506 U.S. at 201-02. Jordan's attempt to perform the role of an attorney and circumvent this requirement is neither original nor persuasive. Other district courts within the Ninth Circuit have rejected this form of legal gamesmanship. *See In re Kermit Douglas Brooms*, 2010 WL 785930, at *1 (N.D. Cal. Mar. 5, 2010) ("litigants may not circumvent" the rules requiring entities to be represented by counsel "through a purported assignment of claims"); *Kraft v. Chevron Corp.*, 2021 WL 5882626, at *2 (D. Ariz. Dec. 10, 2021) ("[p]laintiff is not the first *pro se* plaintiff to have tried" to represent an entity after an assignment of claims). Indeed, other circuits have taken the same approach. *See, e.g.*, *Pridgen v. Anderson*, 113 F.3d 391, 393 (2d Cir. 1997) (a *pro se* litigant "may not assert pro se a claim that has been assigned to the litigant by a corporation"); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("[w]e see no reason to permit any evasion of the general rule [requiring entities to have licensed counsel] by the simple expedient of the assignment of corporate claims to the *pro se* plaintiff").

The Court finds Jordan lacks standing to move this Court to vacate the default judgment entered against Prehired. *See Flir Systems, Inc. v. Motionless Keyboard Co.*, 2011 WL 2011482, at *1 (D. Or. May 23, 2011) (noting a *pro se* co-defendant cannot make any move to dismiss for lack of jurisdiction on a corporate co-defendant's behalf). Accordingly, Jordan's Motion to Vacate Default Judgment is **DENIED**. The Court next turns to Jordan's Motion to Dismiss.

## II.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek to dismiss a complaint for lack of subject-matter jurisdiction. *See Gould v. Mut. Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). "If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added). As such, the Court cannot reach the merits of any dispute until it confirms its own subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). The challenger may either: (1) attack subject matter jurisdiction based on the insufficiency of the allegations contained in the complaint, or (2) present extrinsic evidence demonstrating the court lacks subject-matter jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Mecinas v. Hobbs*, 30 F.4th 890, 896 (9th Cir. 2022) (internal quotations and citations omitted).

### B. Discussion

The original Defendants, including Jordan, removed this case to Federal court under diversity jurisdiction. *See* Removal at 1. Jordan now asks the Court to dismiss the entire action for lack of subject-matter jurisdiction, arguing there is not complete diversity among

the parties. Mot. at 2. In support, Jordan submits an affidavit from Sukumar in which Sukumar declares he "had accrued 1.25% equity in the SAFE with Prehired" as of January 2, 2021. Sukumar Decl. ¶ 7. Furthermore, Sukumar declares he is a citizen of California. *Id.* ¶ 4. Thus, Jordan contends Prehired is a citizen of California, which would destroy complete diversity because Plaintiff is also a citizen of California. Mot. at 2.

District courts have subject-matter jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between … citizens of different States." 28 U.S.C. § 1332(a). Complete diversity of citizenship is required to satisfy diversity jurisdiction. *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89 (2005). Meaning, no plaintiff may be a citizen of the same state as any defendant. *Id.* Complete diversity must exist both when the case is filed and removed to federal court. *Strotek Corp. v. Air Trasnp. Ass'n of Am.*, 300 F.3d 1129, 1132 (9th Cir. 2002).

To determine an individual's state of citizenship, district courts must look to the individual's domicile, not simply the individual's residence. *King v. Great Am. Chicken Corp.*, 903 F.3d 875, 879 (9th Cir. 2018). An individual's domicile is their "permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857-58 (9th Cir. 2001). When a party to the litigation is a limited liability company ("LLC"), the court must consider the citizenship of all the LLC's members, regardless of how great the difference in equity or control. *See Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990); *see also Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 902 (9th Cir. 2006) (holding "LLCs have the citizenship of all of their owners/members").

### 1. Whether the Services Contract Between Prehired and Sukumar Made Sukumar a Member of Prehired

The Court is unpersuaded by Jordan's argument that he and Sukumar intended for the SAFE agreement to make Sukumar a member of Prehired. ECF No. 101 at 9. First, this argument contradicts Jordan's own Notice of Removal, which states Jordan is the *sole*

member of Prehired. Removal at 3. Second, it contradicts the plain text of the services contract between Prehired and Sukumar, which describes Sukumar as a "service provider" and "1099 contractor." SAFE at 1. Third, it contradicts Prehired's "initial operating agreement, which designated [Jordan] as the 'sole member' and 'sole owner'" of Prehired. Jordan Decl. ¶ 16. It is clear to the Court that it is in Jordan and Sukumar's best interests to claim they intended Sukumar to be a member of Prehired because—if the Court does not have subject matter jurisdiction over this case—the $2,643,068 judgment against Prehired may be void. However, the Court need not take Jordan and Sukumar's undisclosed intentions at face value.

It is a "settled principle" in California that "undisclosed intentions of the parties are . . . immaterial," and "outward manifestation[s]" are "controlling." *Quader-King A.G. v. Nebenzal*, 35 Cal.2d 287, 302 (1950). The "undisclosed intentions" of Jordan and Sukumar to make Sukumar a member of Prehired through the declarations submitted, as first alleged at this late stage of the litigation, are neither controlling nor convincing. Rather, the Court finds the outward manifestations of the parties (through Jordan's Notice of Removal, the plain language of the contract, and Prehired's operating agreement) clearly demonstrate it was *not* the mutual intent of the parties to make Sukumar a "member" of Prehired when the services contract was executed.

### 2. Whether Sukumar Had an Equity Interest in Prehired at the Time of Filing and Removal

In support of his contention that Sukumar owned equity in Prehired at the time of removal, Jordan submits the services contract between Prehired and Sukumar, which contains a Simple Agreement for Future Equity ("SAFE") provision. SAFE at 1. Jordan argues—under the SAFE—Sukumar held equity in Prehired at the time of removal, making him a member of Prehired for purposes of determining citizenship. Mot. at 8. Plaintiff, on the other hand, argues the SAFE provides Sukumar with a "*future* interest in a *percentage of the sale proceeds*," which never vested. Opp'n at 6. Plaintiff further explains that an

unvested interest in future equity does not make Sukumar a "member" of Prehired for diversity purposes. *Id*.

Both Parties agree the SAFE is governed by California law. *See generally* ECF Nos. 101, 102. "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties." *Freeman v. Allstate Life Ins. Co.*, 253 F.3d 533, 536 (9th Cir. 2001). "The proper interpretation of a contract is disputable if the contract is susceptible of more than one reasonable interpretation, that is, if the contract is ambiguous." *Fremont Indemnity Co. v. Fremont General Corp.*, 148 Cal.App.4th 97, 114 (2007). "[W]hether a contract is ambiguous is a question of law." *Jones-Hamilton Co. v. Beazer Materials & Services, Inc.*, 973 F.2d 688, 692 (9th Cir. 1992). The ambiguity may be facial, or it may be latently revealed by extrinsic evidence. *Fremont*, 148 Cal.App.4th at 114. The interpreting court "must first consider extrinsic evidence offered to prove the parties' mutual intention." *Id*. The "mere fact that a word or phrase in a [contract] may have multiple meanings does not create an ambiguity." *Palmer v. Truck Ins. Exchange*, 21 Cal.4th 1109, 1117 (1999). "Ambiguity cannot be based on a strained instead of reasonable interpretation" of the language of the contract. *McKee v. State Farm Fire & Cas. Co.*, 145 Cal.App.3d 772, 775-76 (1983).

If the language is ambiguous, the court must interpret it "in the sense in which the promisor believed, at the time of making it, that the promisee understood it." *Bank of the W. v. Super. Ct.*, 2 Cal.4th 1254, 1264-65 (1992). Generally, "words of a contract are to be understood in their ordinary and popular sense." Cal. Civ. Code § 1644; *see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1549 (9th Cir. 1989) ("[c]ontract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself"). Additionally, words used in a "technical sense" should be interpreted "as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." *Id*. §§ 1644-45.

There is no question, if Sukumar had equity in Prehired at the time of removal, Sukumar would be considered a member of Prehired for purposes of determining Prehired's citizenship. *See Johnson*, 437 F.3d at 902 ("LLCs have the citizenship of all of their owners/members"). Therefore, the heart of the dispute before the Court is whether the SAFE gave Sukumar equity in Prehired *before* July 1, 2022, when this case was originally filed.

The Court first looks to the terms of the contract itself. *See Hal Roach Studios, Inc.*, 896 F.2d at 1549. The SAFE reads:

> In the event of a sale or acquisition (as defined as more than fifty percent (50%) of the company **being purchased**) of Prehired, LLC, the Service Provider [Sukumar] will receive a percentage of proceeds *in the sale*.
>
> Starting from the signed Date below, for every year the Service Provider continues to provide satisfactory service to the Company, the Service Provider will earn 1.25% Equity in the SAFE, up to a total of five percent (5%) over a period of 4 years. ***In the event of a sale*** before the next 4 years, the Service Provider will receive five percent (5%) percent [sic] of proceeds *in the sale*.

SAFE at 1 (emphasis added). The terms of the contract, applying the ordinary meaning of the words therein, impose two conditions that must be met before Sukumar can receive equity in Prehired: (1) satisfactory service, and (2) the sale or purchase of more than 50% of the value of Prehired. Until those two conditions are met, Sukumar does not posses any equity in Prehired that can be sold or traded under the plain language of the SAFE. This reading is consistent with how Simple Agreements for Future Equity are understood in the world of business and investing. In 2017, the United States Securities and Exchange Commission published an online article for investors considering SAFEs, which warns:

> ***The most important thing to realize about SAFEs is that you are not getting an equity stake in return. SAFEs are not common stock.*** Common stock represents an ownership stake in a company and entitles you to certain rights under state corporate law and federal securities law. A SAFE, on the other hand, is an agreement to provide you a future equity stake based on the amount you invest if—and only if—a triggering event occurs. ***SAFEs do not represent a current equity stake***

*in the company in which you are investing. Instead, the terms of the SAFE have to be met in order for you to receive your equity stake*.

*Investor Bulletin: Be Cautious of SAFEs in Crowdfunding*, U.S. Securities and Exchange Commission (May 9, 2017), https://www.investor.gov/introduction-investing/general-resources/news-alert/alerts-bulletins/investor-bulletins-52 (last visited Aug. 13, 2025).

Thus, it is commonly understood SAFE agreements provide the ability to obtain equity only upon the condition of some future event. *See LifeVoxel Virginia SPV, LLC v. LifeVoxel.AI, Inc.*, 622 F.Supp.3d 935, 941 n.1 (S.D. Cal. 2022) ("SAFE Notes . . . will convert into equity upon the occurrence of a future 'conversion' event specified in the SAFE Note"); *see also CU*Answers, Inc. v. G2Link, LLC*, 2019 WL 8163864, at *2 (E.D. Pa. Dec. 5, 2019) ("SAFEs provide purchasers the ability to acquire an equity interest at some point in the future"). Furthermore, "SAFE investors are entitled to future equity in the company *only if* certain triggering events occur, such as . . . an M&A [mergers and acquisitions] transaction." *Simple Agreements for Future Equity (SAFEs)*, BDO USA, https://www.bdo.com/insights/industries/asset-management/simple-agreements-for-future-equity-safes (last visited Aug. 13, 2025).

Here, the "triggering event" required for Sukumar to realize any equity in Prehired is a sale or acquisition in which more than fifty percent of Prehired is "***purchased***." SAFE at 1 (emphasis added). Furthermore, the SAFE explicitly states Sukumar will receive up to five percent of Prehired "***[i]n the event of a sale***." *Id*. (emphasis added). If no such triggering event occurred before this case was removed, Sukumar did not possess equity in Prehired. Jordan does not allege any such triggering event occurred in either his Motion or his Reply. Therefore, Sukumar did not possess equity in Prehired at the time the case was filed and removed. As a result, Sukumar was not a member of the LLC, and Sukumar's citizenship need not be considered for purposes of determining diversity jurisdiction. Accordingly, Jordan's Motion to Dismiss is **DENIED**.

///

///

### III. Request for Sanctions

Jordan requests the Court impose "severe sanctions" against Plaintiff for "perpetrating fraud upon the court." Mot. at 16. Specifically, Jordan requests $463,500 in legal fees and costs as compensation for the three years he spent litigating this case in federal court. *Id*. at 24. Jordan also asks the Court to refer Plaintiff's counsel to "appropriate disciplinary authorities." *Id*. at 25. Jordan claims these extreme measures are warranted because Plaintiff obtained a copy of the services contract between Prehired and Sukumar on March 31, 2023, as part of discovery. *Id*. at 9. Jordan argues Plaintiff should have recognized the contract defeated diversity jurisdiction, but instead, Plaintiff moved for default judgment in violation of "counsel's affirmative duty of candor toward the tribunal." *Id*. at 10.

It is clear in light of the Court's denials of Jordan's motions that Jordan's request for sanctions be likewise **DENIED**. However, Jordan's request is concerning to the Court for purposes of maintaining civility amongst the parties and litigants moving forward in this lawsuit. *See* CivLR 2.1. It appears the irony of the request for sanctions is lost on Jordan. In fact, it was Jordan who removed this case to federal court in the first place; it was Jordan who claimed to be the sole owner of Prehired in his Notice of Removal; and, it was Jordan who possessed the services contract with Sukumar all along. Yet, Jordan then chose to request extreme sanctions against Plaintiff and opposing counsel for not catching *his own* alleged mistake or intentional error. The Court reminds Jordan it is his duty as a litigant, *pro se* or not, to be familiar with the Local Rules, which instruct litigants to "seek sanctions sparingly, and not to obtain a tactical advantage or for any other purpose." CivLR 2.1.a.3.j. The Court does not look favorably upon unprofessional and unsubstantiated or frivolous requests for sanctions.

///
///
///
///

# CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Jordan's Motion to Vacate Default Judgment is **DENIED**;

2. Jordan's Motion to Dismiss is **DENIED**;

3. Jordan's Request for Sanctions is **DENIED**.

**IT IS SO ORDERED.**

DATED: September 18, 2025

JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE